## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHNNY EDWARDS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-448-TFM-MU |
| | ) | |
| WALTER MYERS, | ) | |
| | ) | |
| Respondent. | ) | |

## ANSWER OF RESPONDENT

The Respondent, by and through the Attorney General for the State of Alabama, pursuant to this Court's January 11, 2019, order, hereby respectfully submits this Answer to the November 18, 2018, petition for writ of habeas corpus filed by Johnny Edwards. Edwards's petition challenges his convictions and sentences in the Hale County Circuit Court for murder and attempted murder.

The Respondent denies that Edwards is entitled to any relief whatsoever under the federal writ of habeas corpus. The petition is untimely and all claims raised in the petition were either addressed by the Alabama Court of Criminal Appeals and properly denied or are procedurally defaulted because they were not properly presented and exhausted in state court.

## PROCEDURAL BACKGROUND

**A.      State court conviction and sentence.**

1.      On August 18, 2005, Johnny Edwards was convicted in Hale County Circuit Court (Hale County CC-2010-0945), following a jury trial, of murder, a violation of Section 13A-6-2 of the Code of Alabama (1975), and attempted murder, a violation of Sections 13A-4-2 and 13A-6-2. (Ex. 1 at 23-25.) He received concurrent sentences of life imprisonment for the murder conviction and twenty-five years' imprisonment for the attempted murder conviction. (Ex. 1 at 14-15.)

2.      Edwards appealed his conviction, asserting that the trial court erred by failing to grant a mistrial based on an improper closing argument by the prosecutor and by failing to instruct the jury to consider potential lesser-included offenses. (Ex. 2; Ex. 3.) The Alabama Court of Criminal Appeals affirmed his conviction and sentence. (Ex. 4.) Edwards filed an application for rehearing that was denied. (Ex. 5; Ex. 6.) He did not file a petition for writ of certiorari in the Alabama Supreme Court; the Alabama Court of Criminal Appeals issued a certificate of judgment on December 18, 2007. (Ex. 7 at 112.)

2

**B.     State postconviction proceedings.**

3.     On or about June 20, 2008, Edwards filed a petition for postconviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. (Ex. 7 at 35; Ex. 12 at 7.) There is no indication in the record that the circuit court ever issued an order granting or denying that petition. *Id.* at 7.

4.     On December 12, 2015, Edwards filed an amended petition. *Id.* at 2-28. He filed a "addendum" to that petition on April 7, 2016. *Id.* at 77-80. In these filings, Edwards made the following claims:

(1)     that the trial court failed to administer an oath to the prospective jurors pursuant to Rule 18.4(b) of the Alabama Rules of Criminal Procedure;

(2)     that two jurors, A.S. and J.J., committed misconduct when they failed to truthfully answer whether they had relatives who had been charged with a criminal offense, and that juror A.S. also failed to truthfully answer whether she had been the victim of a crime;

(3)     that his trial counsel was ineffective for failing to (a) assert that certain State witnesses were accomplices whose testimony had to be corroborated, (b) move to suppress shotgun shells found in Edwards' car, (c) impeach the testimony of witness Hardy Joe Davis based on prior inconsistent statements, (d) object to testimony by the State's ballistics expert, and (e) move to suppress all evidence illegally obtained from Edwards' house and car; and

(4)     that appellate counsel was ineffective for failing to assert that trial counsel had been ineffective.

3

*Id.* at 14-27; 77-79.

5.      The State moved to dismiss the petition, arguing that all claims in the petition were procedurally barred and meritless. *Id.* at 35-38. On November 10, 2015, the circuit court held an evidentiary hearing on the petition. *Id.* at 196. On November 12, 2015, the circuit court issued an order denying the petition and ordering the State to file a proposed order within seven days. *Id.* at 110. The State did not file a proposed order until December 17, 2015, and a notation to the case action summary indicated that the court took "no action" on the proposed order. *Id.* at 180-82, 195. Edwards filed an objection to the court's adoption of the State's proposed order, which the court found moot. *Id.* at 183-86.

6.      Edwards appealed the denial of his Rule 32 petition. (Ex. 9; Ex. 10.) The Alabama Court of Criminal Appeals remanded the case to the circuit court, ordering it to make written findings of fact regarding each of the claims in the petition and state reasons for its denial of those claims. (Ex. 11.) The circuit court provided a copy of an order it had issued on December 16, 2015, stating that the order had been inadvertently left out of the record. (Ex. 12 at 7-10.)

7.      The circuit court's decision was affirmed by the Alabama Court of Criminal Appeals on September 1, 2017. (Ex. 13.) Edwards filed an application for rehearing that was denied. (Ex. 14; Ex. 15.) His petition for writ of certiorari in the

4

Alabama Supreme Court was denied on November 9, 2017 with certificate of judgment issuing the same day. (Ex. 16; Ex 17.)

## C.    The instant federal petition for habeas corpus

8.    Edwards filed a petition for writ of habeas corpus in the Middle District of Alabama on or about July 2, 2018. (Doc. 6 at 17.) *See, e.g., Adams v. U.S.*, 173 F. 3d 1339, 1341 (11th Cir. 1999) (discussing application of the "prisoner mailbox rule" to pro se filings). The case was transferred to this Court, which ordered Edwards to file a new petition on this Court's forms along with a new motion to proceed without prepayment of fees. (Doc. 6 at 36-37; Doc. 7.) Edwards complied with this order by filing a new petition on November 11, 2018. (Doc. 11 at 12.) This Court ordered the Respondent to file an answer on January 11, 2019. (Doc. 13.)

9.    In the petition, Edwards appears to argue the following:

(1)    that juror A.S. committed misconduct when she failed to truthfully answer whether she had been the victim of a violent crime (Doc. 11 at 13-18);

(2)    that juror A.S. committed misconduct when she failed to truthfully answer whether she had a relative that had been convicted of a criminal offense (Doc. 11 at 13-18);

(3)    that juror S.B. committed misconduct when he failed to disclose that he had been the pastor of a church attended by family members of victim Nathaniel Jefferies in response to a question

5

asking jurors whether they knew the victim "personally or by reputation" (*Id.* at 15-18);

(4)     that his trial counsel was ineffective for failing to move to suppress shotgun shells found in his car (*Id.* at 18-20); and

(5)     that his trial counsel was ineffective for failing to request that the jury be instructed to consider "heat of passion manslaughter" as a lesser-included offense to murder (*Id.* at 20-21). [1]

---

[1] In his petition, Edwards makes a general assertion that appellate counsel as ineffective, but makes no specific allegations suggesting any errors by appellate counsel. (Doc. 11 at 13.) Similarly, he asserts generally that trial counsel failed "to investigate the case and the petitioner's background," but makes no further references to trial counsel's investigation. (Doc. 11 at 13, 18.) To the extent Edwards intended to assert claims other than those described above, the Respondent asks that he clarify the basis for those claims and asks that this Court allow Respondent to supplement its answer, if necessary.

## ARGUMENT

### I.   Edwards's petition is untimely.

10.   Edwards's petition is barred by the limitation period set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244 (d)(1). The AEDPA imposes a one-year statute of limitation on all habeas corpus petitions; "[t]his rule 'serves the well-recognized interest in the finality of state court judgments' and 'reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review.'" *Drew v. Department of Corrections*, 297 F. 3d 1278, 1283 (11th Cir. 2002) (quoting *Duncan v. Walker*, 533 U.S. 167, 179 (2001)).

11.   Where the state's highest court has denied discretionary review of a conviction and review by the United States Supreme Court is not sought, the AEDPA limitations period runs from ninety days after the denial of review by the state's highest court. *See Bond v. Moore*, 309 F.3d 770, 773-74 (11th Cir. 2002) (holding that the limitations period set forth in 28 U.S.C. § 2244(d)(1)(A) starts after the time for filing a petition for writ of certiorari expires pursuant to Supreme Court Rule 13.1). However, where the petitioner fails to seek discretionary review by the state's highest court, this time is not added. *See Gonzalez v. Thaler*, 565 U.S. 134, 154 (2012) (holding that the Court lacks jurisdiction over a petition for

certiorari seeking review of a lower state court where a "state court of last resort" has not denied certiorari review). "[W]ith respect to a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' under § 2244(d)(1)(A) when the time for seeking such review expires[.]" *Id.*

12.   The Alabama Court of Criminal Appeals denied Edwards's application for rehearing on November 30, 2007, and he did not seek certiorari review. (Ex. 6; Ex. 7.) A petition for writ of certiorari from a decision of the Alabama Court of Criminal Appeals must be filed within fourteen days of the decision of the court on the application for rehearing. Ala. R. App. P. 39(c)(2). As such, Edwards's conviction became final for AEDPA purposes on December 14, 2007.

13.   The limitation period is subject to statutory tolling under certain circumstances, such as when a properly filed post-conviction petition is pending in state court. *Moore v. Crosby*, 321 F. 3d 1377, 1380-81 (11th Cir. 2003). The circuit court found that Edwards timely filed a Rule 32 petition on June 20, 2008, but that the record did not show that the petition was ever ruled on. (Ex. 12 at 7; Ex. 13 at 2 n.1.) As such, Edwards's Rule 32 petition filed on December 12, 2015, was treated as an amendment to the 2008 petition. (Ex. 12 at 7; Ex. 13 at 2 n.1.) The certificate of judgment finally disposing of that petition was issued on November 9, 2017.

8

(Ex. 16; Ex. 17.) The AEDPA limitations period was therefore tolled from June 20, 2008, to November 9, 2017.

14.     From the time Edwards's conviction became final on December 14, 2007, until the day he first filed a Rule 32 petition on June 20, 2008, 189 days passed. He therefore had until May 4, 2018, to file a timely petition for writ of habeas corpus—176 days after the AEDPA clock restarted on November 9, 2017. The instant petition was deemed filed on July 2, 2018, which is the date that Edwards asserted that his original habeas petition was placed in the prison mailing system. (Doc. 6 at 17.) *See, e.g., Adams v. U.S.*, 173 F. 3d 1339, 1341 (11th Cir. 1999) (discussing application of the "prisoner mailbox rule" to pro se filings). His petition was therefore filed approximately two months too late.

15.     Equitable tolling is available only in extraordinary cases where the petitioner demonstrates (1) that he has been pursuing his rights diligently, and (2) that some sort of extraordinary circumstance prevented the timely filing of the petition. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). Edwards has made no attempt to make such a showing and therefore the petition should be dismissed as untimely.

II.     **The claims in the petition were properly denied in state court or are procedurally defaulted because they were not properly presented and exhausted in state court.**

16.     Without waiving the foregoing, the claims in the petition were either properly denied in state court or are procedurally defaulted because they were not properly presented and exhausted in state court.

A.      **The claim that juror A.S. failed to disclose that she had been the victim of a violent crime.**

17.     The petition asserts that juror A.S. committed misconduct when she failed to truthfully answer whether she had relatives who had been charged with a criminal offense or whether she had been the victim of a violent crime. (Doc. 11 at 13-18.) The Alabama Court of Criminal Appeals correctly found that Edwards failed to prove that the juror committed any misconduct requiring a new trial.

18.     In rejected this claim, the Court of Criminal Appeals stated the following:

> "The proper standard for determining whether juror misconduct warrants a new trial, as set out by this Court's precedent, is whether the misconduct might have prejudiced, not whether it actually did prejudice, the defendant. *See Ex parte Stewart*, 659 So. 2d 122 (Ala. 1993); *Campbell v. Williams*, 638 So. 2d 804 (Ala. 1994); *Union Mortgage Co. v. Barlow*, 595 So. 2d 1335 (Ala. 1992), *cert. denied*, 506 U.S. 906, 113 S.Ct. 301, 121 L.Ed 2d 224 (1992). The 'might-have-been-prejudiced' standard, of course, casts a 'lighter' burden on the defendant than the actual-prejudice standard. *See*

*Tomlin v. State*, supra, 695 So. 2d [157,] at 170 [(Ala. Crim. App. 1996)]. ...

"It is true that the parties in a case are entitled to true and honest answers to their questions on voir dire, so that they may exercise their peremptory strikes wisely. *See Fabianke v. Weaver*, 527 So. 2d 1253 (Ala. 1988). However, not every failure to respond properly to questions propounded during voir dire 'automatically entitles [the defendant] to a new trial or reversal of the cause on appeal.' *Freeman v. Hall*, 286 Ala. 161, 166, 238 So. 2d 330, 335 (1970); *see also Dawson v. State*, supra, [710 So. 2d 472,] at 474 [(Ala. 1997)]; and *Reed v. State*, supra [547 So. 2d 596 (Ala. 1989)]. As stated previously, the proper standard to apply in determining whether a party is entitled to a new trial in this circumstance is 'whether the defendant might have been prejudiced by a veniremember's failure to make a proper response.' *Ex parte Stewart*, 659 So. 2d at 124. Further, the determination of whether a party might have been prejudiced, i.e., whether there was probable prejudice, is a matter within the trial court's discretion. *Eaton v. Horton*, 565 So. 2d 183 (Ala. 1990); *Land & Assocs., Inc. v. Simmons*, 562 So. 2d 140 (Ala. 1989) (Houston, J., concurring specially).

"'The determination of whether the complaining party was prejudiced by a juror's failure to answer *voir dire* questions is a matter within the discretion of the trial court and will not be reversed unless the court has abused its discretion. Some of the factors that this Court has approved for using to determine whether there was probable prejudice include: "temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or

11

> willfulness in falsifying or failing to answer,
> the failure of the juror to recollect, and the
> materiality of the matter inquired about.'"

> "*Union Mortgage Co. v. Barlow*, 595 So. 2d at 1342-43
> (quoting *Freeman v. Hall*, supra (other citations
> omitted)). …

> "The form of prejudice that would entitle a party to
> relief for a juror's nondisclosure or falsification in voir
> dire would be its effect, if any, to cause the party to forgo
> challenging the juror for cause or exercising a
> peremptory challenge to strike the juror. *Ex parte
> Ledbetter*, 404 So. 2d 731 (Ala. 1981); *Warrick v. State*,
> 460 So. 2d 320 (Ala. Crim. App. 1984); and *Leach v.
> State*, 31 Ala. App. 390, 18 So. 2d 285 (1944). If the
> party establishes that the juror's disclosure of the truth
> would have caused the party either to (successfully)
> challenge the juror for cause or to exercise a peremptory
> challenge to strike the juror, then the party has made a
> prima facie showing of prejudice. *Id.* Such prejudice can
> be established by the obvious tendency of the true facts
> to bias the juror, as in *Ledbetter*, supra, or by direct
> testimony of trial counsel that the true facts would have
> prompted a challenge against the juror, as in *State v.
> Freeman*, 605 So. 2d 1258 (Ala. Crim. App. 1992)."

*Ex parte Dobyne*, 105 So. 2d 763, 771-73 (Ala. 2001) (footnote
omitted).

*Juror A.S.*

During voir dire, defense counsel asked the following:

> "Is there any member of the panel who has ever been or
> had any immediate family member to be -- I'm going to
> define that. Immediate family member would be mother,
> father, sister, brother, children, okay? Either you, your

12

mother or your father, spouse, husband or wife, children, to be the victim of a violent crime? I am going to define that. I don't mean your house got broken into. I don't mean your car got broken into. I mean a violent crime which is a crime against a person, an assaultive kind of crime, a crime where someone may have been hurt but there was an actual person present when the crime was committed. I'm not interested in the kind of crime. I'm not asking you to stand up and identify the kind of crime, just whether or not you or a member of your immediate family has been the victim of a violent crime."

(Record on Direct Appeal ("RDA"), R. 47-48.) Two jurors responded; both were struck by defense counsel. Juror A.S. did not respond.

At the evidentiary hearing, A.S. testified that she had "[p]ressed charges against [her] son once," but that she did not remember when. (R. 37.) Edwards introduced into evidence a complaint signed by A.S. in December 1998, and the case-action-summary sheet reflecting that A.S.'s son was convicted of the misdemeanor offense of menacing in March 1999. When asked why she had pressed charges, A.S. said that it was the result of "just different little things" and that her son "was on drugs." (R. 37.) Edwards's counsel then asked "what kind of violent things did he do to you?" and A.S. responded, "he didn't did nothing to me really." (R. 37-38.) A.S. testified that her son came home one night and "took the chair and broke my lamp." (R. 38.) A.S. said that she then hit her son in the face with a stereo speaker, grabbed the telephone, walked away, and telephoned police. A.S. admitted that in the complaint she had signed she had stated that her son did, "by physical action, intentionally place or attempt to place [her] in fear of imminent serious physical injury by pushing her around and hitting her because she would not give him money." (C. 161; R. 38-39.) When asked if her son had been convicted of a crime, A.S. said that she "didn't go in no court with him. He -- he stayed in jail. He left; he never come back to my house." (R. 40.) She also said that "[h]e stayed in jail until it's time. And next time he went to a drug place and got cleaned up. I'm happy." (R. 40.) When Edwards's counsel told A.S. that she had been "asked if you've been a victim of a violent offense,"

13

A.S. responded that she "didn't understand" and that if she had known, she "wouldn't been on no jury." (R. 40.) A.S. repeatedly stated throughout her testimony that she did not know at the time that she was not "supposed" to serve on Edwards's jury. (R. 33; 41.)

Joel Sogol, Edward's trial attorney, testified that asking prospective jurors if they had been the victim of a crime is a common question he asks during voir dire "because if you have a violent crime and you have someone who's been a victim or family -- been a victim of that -- a crime similar in nature or anything like that, you certainly want to be careful about leaving anybody out of the jury like that." (R. 47-48.) When asked if it was "likely" that he would strike any prospective juror who had been the victim of a crime, Sogol said that he "would need to have asked questions about the specifics" before determining whether to exercise a peremptory strike "[b]ut at the very end of the day, I would probably strike that person." (R. 48.) Sogol later reiterated that if a prospective juror was a victim of a crime, he "would want to know more about it" before determining whether to strike that juror, but that he "probably" would strike such a juror. (R. 49-50.)

The incident with A.S.'s son occurred in December 1998, approximately six-and-a-half-years before Edward's trial. Although this is not a case in which the crime against the victim or victim's family member occurred decades before the trial, as in *Marshall v. State*, 182 So. 3d 573 (Ala. Crim. App. 2014) (matter inquired about occurred 35 years before the defendant's trial), and *McWhorter v. State*, 142 So. 3d 1195 (Ala. Crim. App. 2011) (matter inquired about occurred approximately 30 years before the defendant's trial), six and a half years is a fair amount of time, especially in light of the fact that A.S. was unaware that her son had even been convicted of a crime in relation to the incident. Therefore, we conclude that this factor neither supports nor undermines a finding of probable prejudice.

Although the question was not ambiguous on its face, A.S.'s testimony at the hearing indicated that she did not view the incident with her son as a crime, much less a violent crime and, in fact, did not even know that her son had been convicted. In other words, in A.S.'s

mind, the question propounded was ambiguous. *See, e.g., Marshall*, 182 So. 3d at 610. Moreover, the circuit court found that A.S. did not willfully fail to answer defense counsel's question. There was no evidence presented regarding whether A.S. failed to recollect the incident when questioned during voir dire, but given that A.S. apparently did not view the incident with her son as a violent crime, we agree with the circuit court that her failure to answer the question was not deliberate. Therefore, these factors weigh against a finding of probable prejudice.

As for the materiality of the matter inquired about, this factor also weighs against a finding of probable prejudice. This Court has recognized that "probable injury could result from a juror's failure to disclose any experience as a crime victim because the juror could be less indifferent to someone charged with a crime than a juror who was not a crime victim." *Tomlin v. State*, 695 So. 2d 157, 172 (Ala. Crim. App. 1996). *See also Ex parte Ledbetter*, 404 So. 2d 731, 734 (Ala. 1981). However, Edwards failed to prove that his counsel would have stricken A.S. had she responded to the question. Sogol testified that he "probably" would have stricken A.S. had she revealed that she had been the victim of a violent crime, but he also testified that he would "have asked questions about the specifics" before determining whether to strike her. No testimony was presented as to whether counsel viewed A.S. as a favorable juror based on the responses that she did provide during voir dire, or whether the "specifics" of the incident with A.S.'s son would, in fact, have led Sogol to view A.S. so unfavorably as to convince him strike her. In this respect, this case is on par with *Ex parte Dobyne*, supra.

In *Ex parte Dobyne*, a juror failed to disclose that many years before the trial, she had had limited contact with Dobyne in her capacity as a special-education coordinator. Trial counsel testified that he had considered the juror in question to be a desirable juror but that it was "possible" that he would have stricken the juror had she revealed her contact with Dobyne. The Alabama Supreme Court concluded that Dobyne had failed to prove that had the juror revealed her contact with him, counsel would have challenged the juror for cause or used a peremptory strike against her. The Court noted that to

15

conclude from counsel's testimony that it was "possible" that he would have stricken the juror would have required the inference that the juror's past contact with Dobyne would have changed counsel's view of the juror as desirable, and would then have required a second inference, impermissibly based upon the first inference, that the change in counsel's view of the juror would have been strong enough to have compelled him to remove the juror from the venire.

Similarly, in this case, to conclude from counsel's testimony that he "probably" would have stricken A.S. but that he would have needed to know additional information before making that decision would require "inference on an inference forbidden by law." *Ex parte Dobyne*, 805 So. 2d at 773. First, we would have to infer that the nature and details of the incident would have, in fact, negatively impacted Sogol's view of A.S. Based on this inference, we would then have to infer that the negative impact on Sogol would have been strong enough to have led him to strike A.S. Simply put, Sogol's "testimony fails to establish the requisite prejudice." *Ex parte Dobyne*, 805 So. 2d at 773.

After thoroughly considering the factors in *Ex parte Dobyne*, the record from Edwards's direct appeal, and the evidence presented at the evidentiary hearing, we find no error in the circuit court's denial of this claim of juror misconduct with regard to Juror A.S.

(Ex. 13 at 9-16.)

19.     Pursuant to 28 U.S.C. § 2254(d), habeas relief cannot be granted on this claim because it was "adjudicated on the merits in state court proceedings." Moreover, Edwards cannot show that the denial of relief on this claim in state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

16

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d). Edwards cannot establish that the state court decided this claim in a manner that is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court. He also has not asserted any error in the state court's determination of the facts in light of the evidence presented at the Rule 32 evidentiary hearing. Therefore, this Court should deny relief on this claim.

20.     Without waiving the foregoing, to the extent that Edwards failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court. Pursuant to 28 U.S.C. § 2254(e)(2), Edwards is not entitled to an evidentiary hearing on this claim because it is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable factfinder would have found Edwards guilty and/or he would not have pleaded guilty.

21.     Without waiving the foregoing, the factual averments made in support of this claim are denied.

**B.     The claim that juror A.S. failed to disclose that her son had been charged with a criminal offense.**

22.     The petition asserts that juror A.S. also committed misconduct when she failed to disclose that her son had been charged with a criminal offense. (Doc. 11 at 13-18.) This claim was not properly exhausted in state court.

23.     Section 2254 (b)(1)(A) of Title 28 of the United States Code requires a petitioner seeking a writ of habeas corpus in federal court to first exhaust his remedies in the state court system; this exhaustion requirement is "grounded in the principles of comity and federalism[.]" *Henderson v. Campbell*, 353 F. 3d 880, 897-898 (11th Cir. 2003). This Court will not review claims made in a petition for habeas corpus that were not first properly presented to the state courts. *See McNair v. Campbell,* 416 F. 3d 1291, 1302 (11th Cir. 2005) ("Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court."); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("[I]n a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." ). "The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254 (b) (1)[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). " '[S]tate prisoners must give the state courts one full opportunity to

18

resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones,* 348 F. 3d 1355, 1358-59 (11th Cir. 2003) (quoting *Boerckel,* 526 U.S. at 845).

24.     Claims that are not properly exhausted are barred from federal habeas review under the doctrine of procedural default. *See Smith v. Jones,* 256 F. 3d 1135, 1138 (11th Cir. 2001) ("The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."); *Judd v. Haley,* 250 F. 3d 1308, 1313 (11th Cir. 2001) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.").

25.     In *Pickard v. Connor*, 404 U. S. 270, 275 (1971) the United States Supreme Court held that exhaustion of state remedies requires that petitioners "fairly present" federal claims to the state courts to give the state the opportunity to "pass upon and correct" alleged violations of a petitioner's federal rights. It is not sufficient for a petitioner to make a general appeal to a constitutional guarantee as broad as due process to present the substance of such a claim to a state court. *See Anderson v. Harless*, 459 U.S. 4, 7 (1982). A claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a

19

statement of the facts which entitle the petitioner to relief. *Pickard*, 404 U. S. at 277. *See also Duncan v. Henry*, 513 U. S. 364, 365-66 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling in a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."); *Isaacs v. Head*, 300 F. 3d 1232, 1254 (11th Cir. 2002) (finding that the petitioner had not fairly presented to the state appellate court a federal claim that his rights were violated by the failure to record a prayer which opened his murder trial where "[n]o federal cases were cited, and no language was used by [petitioner] which would have alerted the Georgia Supreme Court to the fact that Isaacs was asserting a federal constitutional claim"); *Kelly v. Sec'y for Dept. of Corr.*, 377 F. 3d 1317, 1344 (11th Cir. 2004) (stating that a claim is not properly presented merely because all the facts necessary to support the claim were before the state courts or because a somewhat similar state-law claim was made).

26.    There are only two ways in which a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims in the state courts may overcome this procedural default. Under the "cause and prejudice" procedural default exception, the petitioner is required to "demonstrate cause for the default and actual prejudice as a result of the alleged violation of

20

federal law." *Coleman,* 501 U.S. at 750. Under the "fundamental miscarriage of justice" procedural default exception, the petitioner may obtain review of a claim if he "can demonstrate a sufficient probability that [the federal court's] failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). This latter exception applies only in the "narrow class of cases" where the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Schlup v. Delo,* 513 U.S. 298, 315, 328 (1995). The Supreme Court has since observed that *Schlup* sets a "demanding" standard that will be met only in "extraordinary" cases. *House v. Bell*, 547 U.S. 518, 538 (2006).

27.     In his amended Rule 32 and an addendum to his Rule 32 petition, Edwards alleged that juror A.S. failed to answer truthfully that she had relatives who had been charged with a criminal offense and that she had been the victim of a crime. (Ex. 7 at 59, 77-78.) The circuit court denied relief on both claims. (Ex. 12 at 8-9.) On appeal, Edwards reasserted that A.S. failed to answer truthfully that she had been the victim of a crime. (Ex. 9 at 14.) That claim was denied by the appellate court and is discussed above in part II.B. (Ex. 13 at 9-16.) However, Edwards did not reassert in his appellate brief that A.S. failed to answer truthfully that she had relatives who had been charged with crimes. (Ex. 9 at 8-10.)

28.     Because Edwards did not reassert on appeal his claim that A.S. failed to disclose that she had relatives who had been charged with crimes, the Alabama Court of Criminal Appeals found that the claim was "deemed abandoned and will not be considered by this Court." (Ex. 13 at 10 n.4 (citing *Ferguson v. State*, 13 So. 3d 418, 436 (Ala. Crim. App. 2008).)

29.     Edwards failed to provide the state courts with one full opportunity to review this claim and it is therefore unexhausted. *See, e.g., Coleman*, 501 U.S. at 731; *Boerckel*, 526 U.S. at 842. This claim is not capable of further presentation to the state courts because any subsequent petition would be untimely and successive. *See* Ala. R. Crim. P. 32.2(b) and 32.2(c). Edwards has not alleged any cause or prejudice for his default of this claim, nor has he established that a fundamental miscarriage of justice will occur if this Court does not review it. *See, e.g., Coleman,* 501 U.S. at 750; *Edwards,* 529 U.S. at 451.

30.     Without waiving the foregoing, to the extent that Edwards failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court. Pursuant to 28 U.S.C. § 2254(e)(2), Edwards is not entitled to an evidentiary hearing on this claim because it is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a

factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable factfinder would have found Edwards guilty and/or he would not have pleaded guilty.

31.    Without waiving the foregoing, the factual averments made in support of this claim are denied.

### C.    The claim that juror S.B. failed to disclose that he knew the murder victim.

32.    The petition asserts that juror S.B. committed misconduct when she failed to truthfully answer whether he knew the victim "either personally or by reputation." (Doc. 11 at 15-18.) The Alabama Court of Criminal Appeals correctly found that Edwards failed to prove that the juror committed any misconduct requiring a new trial.

33.    In rejected this claim, the Court of Criminal Appeals first recited the general standards applicable to review of a juror misconduct claim, as already quoted above in part II.A. (Ex. 13 at 10-12.) It then stated the following:

> Initially, we point out that Edwards did not raise in his petition or amendment a claim regarding juror S.B. See note 1, supra. Edwards raised this claim for the first time at the evidentiary hearing. However, the circuit court mentioned this claim in its order, thus indicating that

it permitted Edwards to amend his petition at the hearing to include this claim. Therefore, we review it.

> During voir dire, defense counsel asked the following:

> > "Is there any member of the panel who knew or knew of in any degree, you knew either personally or by reputation Nathaniel Jeffries [the victim]? Any member of the panel who if you would please stand up, you knew him either personally or by reputation?"

(RDA, R. 36.) Juror S.B. did not respond.

> At the evidentiary hearing, Tameka Edwards ("Tameka") testified that she attends St. Paul Baptist Church and that S.B. is a pastor there. Tameka said that the church is a "family church" and that her family and "the Jeffries" attend. (R. 43-44.) When asked which members of the Jeffries' family attended the church, Tameka stated: "You know, cousins and aunts, you know, uncles go there." (R. 44.) Tameka said that she had never seen Nathaniel Jeffries at the church. Sogol testified that if he had been aware that a prospective juror was a pastor of a church that the victim's family attended, he "would probably want to follow up with some other questions. But by and large, if he's the preacher of the family church, I would not want him on my jury." (R. 46.)

> Edwards failed to prove that S.B. failed to answer defense counsel's question truthfully. The question asked was whether anyone knew Nathaniel Jeffries either personally or by reputation. Contrary to Edwards's argument at the hearing, the phrase "in any degree" as used in the question did not enlarge the question to include family members. Edwards presented no evidence indicating that S.B. knew Jeffries either personally or by reputation. The only evidence presented was that some unidentified cousins, aunts, and uncles in the Jeffries family attended the church where S.B. was a pastor. Moreover, although Sogol testified that he probably would have stricken S.B. had he known that S.B. was a pastor at the Jeffries' family church, Sogol had the opportunity to ask the venire whether

anyone knew any of Jeffries's family members and he chose not to do so.

Edwards failed to prove that any misconduct by Juror S.B. occurred. Therefore, the circuit court properly denied this claim.

(Ex. 13 at 9-16.)

34.    Pursuant to 28 U.S.C. § 2254(d), habeas relief cannot be granted on this claim because it was "adjudicated on the merits in state court proceedings." Moreover, Edwards cannot show that the denial of relief on this claim in state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d). Edwards cannot establish that the state court decided this claim in a manner that is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court. He also has not asserted any error in the state court's determination of the facts in light of the evidence presented at the Rule 32 evidentiary hearing. Therefore, this Court should deny relief on this claim.

35.    Without waiving the foregoing, to the extent that Edwards failed to develop the factual basis for this claim in state court proceedings, he is not entitled

25

to any further evidentiary hearing in this Court. Pursuant to 28 U.S.C. §
2254(e)(2), Edwards is not entitled to an evidentiary hearing on this claim because
it is not based on a "new rule of constitutional law, made retroactive to cases on
collateral review by the Supreme Court, that was previously unavailable" or "a
factual predicate that could not have been previously discovered through the
exercise of due diligence," and because the facts underlying the claim would not be
sufficient to establish by clear and convincing evidence that, but for the
constitutional error alleged in this claim, no reasonable factfinder would have
found Edwards guilty and/or he would not have pleaded guilty.

36.     Without waiving the foregoing, the factual averments made in support
of this claim are denied.

> ### D.     The claim that trial counsel was ineffective for failing to move to suppress shotgun shells found in his car that connected him to the crime.

37.     The petition asserts that trial counsel was ineffective because he failed
to file a motion to suppress shotgun shells that were found in his car, which he
asserts corroborated accomplice testimony claiming that he possessed the shotgun
used in the murder and attempted murder. (Doc. 11 at 18-20.) The Alabama Court
of Criminal Appeals correctly found that Edwards failed to prove this claim

because he did not ask trial counsel any questions about his decision not to seek suppression of this evidence.

38.    In rejected this claim, the Court of Criminal Appeals stated the following:

> Edwards also reasserts . . . that his trial counsel was ineffective for not moving to suppress shotgun shells found in his automobile.

> In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel. A defendant has the burden of showing (1) that his or her counsel's performance was deficient and (2) that the deficient performance actually prejudiced the defense. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Ricter*, 562 U.S. 86, 112 (2011). Furthermore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

> In *Broadnax v. State*, 130 So. 3d 1232 (Ala. Crim. App. 2013), this Court stated:

>> "It is extremely difficult, if not impossible, to prove a claim of ineffective assistance of counsel without questioning counsel about the specific claim, especially when the claim is based on specific actions, or inactions, of counsel that occurred outside the record. Indeed, 'trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective.' *Rylander v. State*, 101 S.W.3d 107,111 (Tex.

Crim. App. 2003). This is so because it is presumed that counsel acted reasonably:

> "'The presumption impacts on the burden of proof and continues throughout the case, not dropping out just because some conflicting evidence is introduced. "Counsel's competence . . . is presumed, and the [petitioner] must rebut this presumption by *proving* that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305 (1986) (emphasis added) (citations omitted). An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption. Therefore, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." *Williams* [*v. Head,*] 185 F.3d [1223,] 1228 [(11th Cir. 1999)]; *see also Waters* [*v. Thomas,*] 46 F.3d [1506,] 1516[(11th Cir. 1995)] (en banc) (noting that even though testimony at habeas evidentiary hearing was ambiguous, acts at trial indicate that counsel exercised sound professional judgment).'

"*Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000). "'*If the record is silent as to the reasoning behind counsel's actions, the presumption of effectiveness is sufficient to deny relief on [an] ineffective assistance of counsel claim.*'" *Dunaway v. State*, [Ms. CR-06-0996, December 18, 2009] ___ So. 3d ___, ___ (Ala. Crim. App. 2009) [, rev'd on other grounds, 198

So. 3d 567 (Ala. 2014),] (quoting *Howard v. State*, 239 S.W.3d 359, 367 (Tex. App. 2007)).”

130 So. 3d at 1255-56 (emphasis added).

Subsequently, in *Stallworth v. State*, 171 So. 3d 53 (Ala. Crim. App. 2013) (opinion on return to remand), this Court explained:

> “Further, the presumption that counsel performed effectively ‘“is like the ‘presumption of innocence’ in a criminal trial,”’ and the petitioner bears the burden of disproving that presumption. *Hunt v. State*, 940 So. 2d 1041, 1059 (Ala. Crim. App. 2005) (quoting *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc)). ‘Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the petitioner.’ *Id.* ‘“‘An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation]. Therefore, “where the record is incomplete or unclear about [counsel]’s actions, [a court] will presume that he did what he should have done, and that he exercised reasonable professional judgment.”’”’ *Hunt*, 940 So. 2d at 1070-71 (quoting *Grayson v. Thompson*, 257 F.3d 1194, 1218 (11th Cir. 2001), quoting in turn *Chandler*, 218 F.3d at 1314 n.15, quoting in turn *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999)). Thus, to overcome the strong presumption of effectiveness, *a Rule 32 petitioner must, at his evidentiary hearing, question trial counsel regarding his or her actions and reasoning.* *See, e.g., Broadnax v. State*, 130 So. 3d 1232, 1255-56 (Ala. Crim. App. 2013) (recognizing that ‘[i]t is extremely difficult, if not impossible, to prove a claim of ineffective assistance of counsel without questioning counsel about the specific claim, especially when the claim is based on specific actions, or inactions, of counsel that occurred outside the record[, and holding that] circuit court correctly found

29

that Broadnax, by failing to question his attorneys about this specific claim, failed to overcome the presumption that counsel acted reasonably'); *Whitson v. State*, 109 So. 3d 665, 676 (Ala. Crim. App. 2012) (holding that a petitioner failed to meet his burden of overcoming the presumption that counsel were effective because the petitioner failed to question appellate counsel regarding their reasoning); *Brooks v. State*, 929 So. 2d 491, 497 (Ala. Crim. App. 2005) (holding that a petitioner failed to meet his burden of overcoming the presumption that counsel were effective because the petitioner failed to question trial counsel regarding their reasoning); *McGahee v. State*, 885 So. 2d 191, 221-22 (Ala. Crim. App. 2003) ('[C]ounsel at the Rule 32 hearing did not ask trial counsel any questions about his reasons for not calling the additional witnesses to testify. Because he has failed to present any evidence about counsel's decisions, we view trial counsel's actions as strategic decisions, which are virtually unassailable.'); *Williams v. Head*, 185 F.3d at 1228; *Adams v. Wainwright*, 709 F.2d 1443, 1445-46 (11thCir. 1983) ('[The petitioner] did not call trial counsel to testify ... [; therefore,] there is no basis in this record for finding that counsel did not sufficiently investigate [the petitioner's] background.'); *Callahan v. Campbell*, 427 F.3d 897, 933 (11th Cir. 2005) ('Because [trial counsel] passed away before the Rule 32 hearing, we have no evidence of what he did to prepare for the penalty phase of [the petitioner's] trial. In a situation like this, we will presume the attorney "did what he should have done, and that he exercised reasonable professional judgment."').

171 So. 3d at 92-93 (emphasis added). *See also Reeves v. State*, [Ms. CR-13-1504, June 10, 2016 ] ___ So. 3d ___, ___ (Ala. Crim. App. 2016) (holding that Rule 32 petitioner had failed to prove his claims of ineffective assistance of trial and appellate counsel because he did not call his trial or appellate counsel to testify at the Rule 32

30

evidentiary hearing); and *Clark v. State*, 196 So. 3d 285, 312 (Ala. Crim. App. 2015) (holding that Rule 32 petitioner had failed to prove that his appellate counsel was ineffective for not raising issues on appeal where the petitioner did not call his appellate counsel to testify at the Rule 32 evidentiary hearing regarding counsel's reasons for not raising those issues).

In this case, although Edwards called his trial counsel to testify at the evidentiary hearing, Edwards did not question counsel about [this claim]. Because Edwards did not question his trial counsel about [this claim], the record is silent as to the reasons counsel . . . did not move to suppress shotgun shells found in his automobile. As noted above, where "''"the record is silent as to the reasoning behind counsel's actions, the presumption of effectiveness is sufficient to deny relief on [an] ineffective assistance of counsel claim."''" *Broadnax*, 130 So. 3d at 1256 (citations omitted). Therefore, the circuit court properly denied [this claim] of ineffective assistance of counsel.

(Ex. 13 at 17-21 (footnote omitted).)

39.   Pursuant to 28 U.S.C. § 2254(d), habeas relief cannot be granted on this claim because it was "adjudicated on the merits in state court proceedings." Moreover, Edwards cannot show that the denial of relief on this claim in state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d). Edwards cannot establish that the state court decided this claim in a manner that is contrary to or involves an

31

unreasonable application of clearly established federal law as determined by the United States Supreme Court. He also has not asserted any error in the state court's determination of the facts in light of the evidence presented at the Rule 32 evidentiary hearing. Specifically, he does not dispute the finding by the Court of Criminal Appeals that he failed to ask trial counsel any questions about his failure to seek suppression of the shotgun shells. (Doc. 11 at 18-20.) Therefore, this Court should deny relief on this claim.

40.    Without waiving the foregoing, to the extent that Edwards failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court. Pursuant to 28 U.S.C. § 2254(e)(2), Edwards is not entitled to an evidentiary hearing on this claim because it is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable factfinder would have found Edwards guilty and/or he would not have pleaded guilty.

41.     Without waiving the foregoing, the factual averments made in support of this claim are denied.

**E.      The claim that trial counsel was ineffective for failing to request that the jury be instructed to consider "heat of passion manslaughter" as a lesser-included offense to murder.**

42.     The petition asserts that his trial counsel was ineffective for failing to request that the jury be instructed to consider "heat of passion manslaughter" as a lesser-included offense to murder (*Id.* at 20-21). This claim is procedurally defaulted due to Edwards's failure to assert it in his Rule 32 petition.

43.     "A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." *Judd v. Haley,* 250 F. 3d 1308, 1313 (11th Cir. 2001). Federal courts are precluded from reviewing a question of federal law decided by a state court "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "This rule applies whether the state law ground is substantive or procedural" and, in particular, applies when a state court declines "to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-30. "Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails

to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994). Ordinarily, state procedural rules are given preclusive effect if they are "firmly established and regularly followed." *Lee v. Kemna*, 534 U.S. 362, 376 (2002). "In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism." *Coleman*, 501 U.S. at 731.

44.     There are only two ways in which a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims in the state courts may overcome this procedural default. Under the "cause and prejudice" procedural default exception, the petitioner is required to "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Id.* at 750. Under the "fundamental miscarriage of justice" procedural default exception, the petitioner may obtain review of a claim if he "can demonstrate a sufficient probability that [the federal court's] failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). This latter exception applies only in the

"narrow class of cases" where the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Schlup v. Delo,* 513 U.S. 298, 315, 328 (1995). The Supreme Court has since observed that *Schlup* sets a "demanding" standard that will be met only in "extraordinary" cases. *House v. Bell*, 547 U.S. 518, 538 (2006).

45.    Edwards alleged on direct appeal that the trial court erred by not instructing the jury to consider heat-of-passion manslaughter. (Ex. 2 at 17-29.) The Court of Criminal Appeals held that the issue was unpreserved; although trial counsel did argue for a manslaughter instruction based on evidence that he purported showed that Edwards's actions were reckless, he never mentioned heat-of-passion manslaughter, did not request such an instruction, and did not object when the trial court failed to give such an instruction. (Ex. 4 at 16-18.)

46.    Though Edwards's amended Rule 32 petition raised several allegations that trial counsel was ineffective, it never asserted that trial counsel was ineffective for failing to ask that the jury be instructed to consider heat-of-passion manslaughter as a lesser-included offense. (Ex. 7 at 20-26.) This claim was raised for the first time on appeal. (Ex. 9 at 16-19.) In declining to review this claim, the Court of Criminal Appeals stated the following:

Edwards further argues on appeal that his trial counsel was ineffective for not requesting a jury instruction on heat- of-passion manslaughter. However, Edwards did not raise this claim in his petition or amendment. See note 1, supra. In his brief, Edwards argues:

> "This [claim] was argued at the Rule 32 hearing and the trial court admitted into the record the entire memorandum issued by this Court on direct appeal as State's Exhibit 4. (R. 13-14). Consequently, there was both oral and written evidence submitted to the trial court proving that trial counsel was ineffective for failing to request a heat of passion manslaughter instruction."

(Edwards's brief, p. 14.) Although Edwards is correct that this Court's memorandum affirming his convictions and sentences was introduced into evidence at the hearing, Edwards is incorrect that this claim was argued at the hearing. At no time during the hearing did Edwards argue, or even mention, this claim of ineffective assistance of counsel. Indeed, Edwards did not present argument regarding any of his claims of ineffective assistance of counsel at the hearing; he argued only his claims of juror misconduct. This Court's memorandum does not constitute "written evidence" of a claim that was never raised by Edwards in his petition, in his amendment, or at the evidentiary hearing. It is well settled that "[a]n appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition." *Arrington v. State*, 716 So. 2d 237, 239 (Ala. Crim. App. 1997). Because this claim was never raised by Edwards in the circuit court, it was not properly preserved for review and will not be considered.

(Ex. 13 at 22.)

47.    The procedural bar found by the Court of Criminal Appeals is firmly

established and regularly followed. *See, e.g., Boyd v. State*, 913 So. 2d 1113, 1144

(Ala. Crim. App. 2003); *McGahee v. State*, 885 So. 2d 191, 224 (Ala. Crim. App.

2003); *Sims v. State*, 869 So. 2d 1181, 1184 (Ala. Crim. App. 2003); *Arrington*, 716 So. 2d at 239; *Cleveland v. State*, 570 So. 2d 855, 857 (Ala. Crim. App. 1990); *Morrison v. State*, 551 So. 2d 435, 437 (Ala. Crim. App. 1990). Because Edwards failed to meet state procedural requirements for presenting this claim, this Court should find that it is procedurally defaulted. *Coleman*, 501 U.S. at 729; *Lee v. Kemna*, 534 U.S. at 376.

48.     This claim is not capable of further presentation to the state courts because any subsequent petition would be untimely and successive. *See* Ala. R. Crim. P. 32.2(b) and 32.2(c). Alabama Rules specifically preclude claims of ineffective assistance of trial or appellate counsel in a successive petition under any circumstances. Ala. R. Crim. P. 32.2(d). Edwards has not alleged any cause or prejudice for his default of this claim, nor has he established that a fundamental miscarriage of justice will occur if this Court does not review it. *See, e.g., Coleman,* 501 U.S. at 750; *Edwards,* 529 U.S. at 451.

49.     Without waiving the foregoing, to the extent that Edwards failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court. Pursuant to 28 U.S.C. § 2254(e)(2), Edwards is not entitled to an evidentiary hearing on this claim because it is not based on a "new rule of constitutional law, made retroactive to cases on

37

collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable factfinder would have found Edwards guilty and/or he would not have pleaded guilty.

50.    Without waiving the foregoing, the factual averments made in support of this claim are denied.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Edwards's petition for writ of habeas corpus.

Respectfully submitted,

Steve Marshall (MAR083)
Attorney General
By:


/s/Michael A. Nunnelley
Michael A. Nunnelley (NUN006)
Assistant Attorney General

39

# EXHIBITS

Exhibit 1      Appellate record vol. 1, *Edwards v. State*, CR-05-0899, Alabama Court of Criminal Appeals

Exhibit 2      Appellant's brief, *Edwards v. State*, CR-05-0899, Alabama Court of Criminal Appeals

Exhibit 3      Appellee's brief, *Edwards v. State*, CR-05-0899, Alabama Court of Criminal Appeals

Exhibit 4      Memorandum opinion, *Edwards v. State*, CR-05-0899, Alabama Court of Criminal Appeals

Exhibit 5      Application for rehearing, *Edwards v. State*, CR-05-0899, Alabama Court of Criminal Appeals

Exhibit 6      Application for rehearing overruled, *Edwards v. State*, CR-05-0899, Alabama Court of Criminal Appeals

Exhibit 7      Appellate record, *Edwards v. State*, CR-15-0335, Alabama Court of Criminal Appeals

Exhibit 8      Appellate record (first supplement), *Edwards v. State*, CR-15-0335, Alabama Court of Criminal Appeals

Exhibit 9      Appellant's brief, *Edwards v. State*, CR-15-0335, Alabama Court of Criminal Appeals

Exhibit 10      Appellee's brief, *Edwards v. State*, CR-15-0335, Alabama Court of Criminal Appeals

Exhibit 11      Order, *Edwards v. State*, CR-15-0335, Alabama Court of Criminal Appeals

Exhibit 12      Appellate record (second supplement), *Edwards v. State*, CR-15-0335, Alabama Court of Criminal Appeals

Exhibit 13      Memorandum opinion, *Edwards v. State*, CR-15-0335, Alabama Court of Criminal Appeals

Exhibit 14      Application for rehearing overruled, *Edwards v. State*, CR-15-0335, Alabama Court of Criminal Appeals

Exhibit 15      Application for rehearing overruled, *Edwards v. State*, CR-15-0335, Alabama Court of Criminal Appeals

Exhibit 16      Certificate of judgment, *Edwards v. State*, CR-15-0335, Alabama Court of Criminal Appeals

Exhibit 17      Writ of certiorari denied, *Ex parte Edwards*, No. 1170015, Alabama Supreme Court

## CERTIFICATE OF SERVICE

I hereby certify that on this the <u>18th</u> day of March 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the foregoing to the following non-CM/ECF participant:

> Johnny Edwards, *Pro Se*
> AIS #244566
> Easterling Correctional Facility
> 200 Wallace Drive
> Clio, Alabama 36017-2615

<br>

> <u>/s/ Michael A. Nunnelley</u>
> Michael A. Nunnelley (NUN006)
>
> Office of the Attorney General
> 501 Washington Avenue
> Montgomery, Alabama 36130
> Phone:        (334) 242-7300
> Fax:            (334) 242-2848
> E-Mail:        docketroom@ago.state.al.us

2597104/206335-001

42